UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

ROSA ESTHER BRIZUELA, *et al.*,

                              Plaintiffs,

         v.

CITY OF SPARKS, *et al.*,

                              Defendants.

Case No. 3:19-cv-00692-MMD-WGC

ORDER

## I.    SUMMARY

This is a case for wrongful death and excessive force arising out of an incident in which Sparks Police Department officers shot and killed Rolando Antonio Brizuela. Plaintiffs Rosa Ester Brizuela—individually ("Rosa Brizuela") and in her capacity as administrator of the Rolando Brizuela's estate ("Special Administrator")—Roland Brizuela, and Morgan Brizuela bring claims under Nevada state law and the Fourth and Fourteenth Amendments to the U.S. Constitution. (ECF No. 55 ("Third Amended Complaint" or "TAC").) Defendants are the City of Sparks, Officer Eli Maile, and Officer Brian Sullivan.

Before the Court is Defendants' partial motion to dismiss Plaintiffs' Third Amended Complaint. (ECF No. 56 ("Motion").) Plaintiffs responded and filed a countermotion for leave to file a fourth amended complaint.[1] (ECF Nos. 64, 64-1 ("PFAC" or "Proposed Fourth Amended Complaint").) Defendants replied that the TAC contains certain defects which require its dismissal. Plaintiffs concede certain defects and object to others.

As further explained below, the Court will grant in part and deny in part Defendants' Motion. The Court will further grant Plaintiffs' countermotion for leave to file a fourth amended complaint that cures the deficiencies in the TAC. However, due to repeated

---

[1]Defendants replied. (ECF No. 69.)

1  failures to cure the deficiencies with the SAC and TAC, which persist even in the PFAC,
2  the Court will explain its findings on the disputed aspects of Defendants' Motion. If
3  Plaintiffs fail to cure procedural issues in the expected fourth amended complaint, those
4  claims may be subject to dismissal.

5  **II.    BACKGROUND**

6      The following facts are adapted from the TAC, the currently operative complaint.

7      **A.    Death of Ronaldo Brizuela**

8      In the evening on July 17, 2018, Defendants Maile and Sullivan shot Rolando
9  Brizuela eleven times through his patio fence. (ECF No. 55 at 2.) Plaintiff Rosa Brizuela,
10 Rolando's wife, was present at the front door and heard her husband die. (*Id.*)

11     On that day, Sparks Police Department officer Sullivan responded to a 911 call
12 from a woman who was concerned that her neighbor, Rolando Brizuela, had been looking
13 at her. (*Id.* at 5.) She requested Sullivan escort her home, so he followed her in his car
14 while she drove herself back to her house. (*Id.*) When Sullivan arrived at the woman's
15 house, he encountered Rolando Brizuela standing near a car. (*Id.*) Rolando Brizuela
16 asked Sullivan, "are you going to shoot me?" to which Sullivan replied, "I was not planning
17 on it." (*Id.*) Sullivan later reported this encounter to Maile and stated Rolando Brizuela
18 was "acting weird." (*Id.*)

19     Sullivan was then dispatched to a nearby location to investigate the theft of a
20 skateboard. (*Id.*) When he arrived, minor N.A. told Sullivan that his skateboard had been
21 stolen by a man allegedly matching Rolando Brizuela's description. (*Id.*) The minor had a
22 bump above his eyebrow, which Plaintiffs assert was a pimple, and which Sullivan later
23 told Maile was a "big ol' knot on his forehead." (*Id.*)

24     Maile arrived on the scene and Defendants then went together to find Rolando
25 Brizuela in furtherance of their skateboard theft investigation. (*Id.* at 6.) Defendants ran
26 the license plate of the vehicle Sullivan had previously seen Rolando Brizuela standing
27 near, and Defendants learned Rolando Brizuela's name and address. (*Id.*) Defendants
28 then walked to the listed address in order to detain or arrest Rolando Brizuela. (*Id.*)

When Defendants arrived, Rolando Brizuela was standing behind the front gate of his enclosed porch. (*Id.*) Rolando Brizuela briefly emerged to tell Defendants that they had to leave unless they had a warrant. (*Id.*) Defendants did not leave, but continued approaching Rolando Brizuela. (*Id.*) Rolando Brizuela went quickly back inside his enclosed porch and closed the gate. (*Id.*) The porch's enclosure is comprised of a lattice wood that allows persons outside to partially see in. (*Id.*)

Rolando Brizuela again asked Defendants to leave and repeated that they needed a warrant if they wanted to be on his property. (*Id.*) Defendants did not leave, but instead began questioning Rolando Brizuela about the encounter with the minor N.A. (*Id.* at 7.) Rolando Brizuela asked Defendants why he was being accused. (*Id.*) Sullivan began knocking on Rolando Brizuela's front door, and Rolando Brizuela asked him to stop. (*Id.*) Sullivan responded, "Oh, I am going to knock." (*Id.*) Sullivan later stated he wanted to ensure Rolando Brizuela was arrested before he had the opportunity to go inside the house. (*Id.*)

As Sullivan continued to knock on the front door, Plaintiff Rosa Brizuela opened the door. (*Id.*) Sullivan told her it was in her best interest to let him in, even after Rolando Brizuela told him he was not allowed to enter. (*Id.*) Rolando Brizuela told his wife to tell Defendants to leave. (*Id.*) Maile continued to try to speak with Rolando Brizuela, who accused Defendants of being "thieves." (*Id.*) Maile then noticed Rolando Brizuela had a gun, yelled gun, and both Defendants drew their weapons. (*Id.*)

Rolando Brizuela was standing in his enclosed patio with his left side to Defendants and a pistol in his right hand. (*Id.*) Defendants did not give Rolando Brizuela any warning they intended to use deadly force, but both began to shoot at him. (*Id.*) Defendants fired on Rolando Brizuela a total of 16 times, eventually striking him 11 times. (*Id.*) Defendants continued to fire on Rolando Brizuela after he began to fall, hitting him in his left side, his back, and the back of his head. (*Id.*) Defendants did not suffer any injuries. (*Id.*)

///

1    Less than one year prior, Rolando Brizuela had been placed on a "legal 2000 hold"

2    by Sparks Police Department officers.[2] (*Id.*) Sullivan had been informed of this fact by

3    dispatch. (*Id.*)

4    Despite Rolando Brizuela's injuries, Defendants did not provide medical aid or

5    promptly summon emergency medical attention. (*Id.*) Instead, Defendants waited for

6    backup to arrive despite the obvious risk to Rolando Brizuela's life. (*Id.*)

7    **B.    Procedural History**

8    Plaintiffs now bring this action under Nevada state law, 42 U.S.C. § 1983, section

9    504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act.

10   (ECF No. 56.)

11   This is Plaintiffs' Third Amended Complaint. After filing their initial complaint (ECF

12   No. 1), Plaintiffs amended as a matter of right (ECF No. 6). Plaintiffs then moved to amend

13   their first amended complaint, which Defendants did not oppose, and Plaintiffs filed a

14   second amended complaint (ECF No. 28 ("Second Amended Complaint" or "SAC")).

15   Defendants moved to dismiss the SAC, arguing that the SAC improperly alleged certain

16   claims. (ECF No. 29.) Plaintiffs moved to file the TAC. (ECF No. 45.) Defendants opposed

17   the motion for leave to file, arguing the TAC did not cure the problems presented in the

18   SAC. (ECF No. 47.)

19   The Court heard argument on Defendants' motion to dismiss the SAC and

20   Plaintiffs' motion for leave to file the TAC on December 7, 2020. (ECF No. 54.) After

21   considering the parties' arguments, the Court granted Plaintiffs' motion for leave to file

22

23        [2]Plaintiffs do not expressly clarify, but "legal 2000 hold" likely refers to a 72-hour
24   civil commitment hold on a person suffering from a mental health crisis, defined as "any
     person: (a) Who has a mental illness; and (b) Whose capacity to exercise self-control,
25   judgment and discretion in the conduct of the person's affairs and social relations or to
     care for his or her personal needs is diminished, as a result of the mental illness, to the
26   extent that the person presents a substantial likelihood of serious harm to himself or
     herself or others, as determined pursuant to NRS 433A.0195." NRS § 433.0175(1); *see*
27   *also* Jennifer Rains, *"Legal 2000s" aka 72 Hour Hold & What Happens Next*, Nev. Dep't
     of         Public        Health        (2018),        available        at
28   https://dpbh.nv.gov/uploadedFiles/dpbhnvgov/content/Boards/RBHPB/Meetings/2018/L
     egal%202000%20Process.pdf (explaining the relevant state laws associated with "legal
     2000 holds").

4

1  the TAC and denied Defendants' motion to dismiss the SAC as moot. (*Id.*) However, the

2  Court instructed Plaintiffs that the TAC must assert only one *Monell* claim for municipal

3  liability against the City of Sparks and may only assert § 1983 claims against Maile and

4  Sullivan as individuals. The Court further instructed Plaintiffs that they must clarify which

5  claims are asserted as survival claims by the Special Administrator, and which are

6  asserted by the individual Plaintiffs for their own harms.

7      Plaintiffs filed the TAC on December 17, 2020. (ECF No. 55.) In the TAC, Plaintiffs

8  assert 13 claims against Defendants: (1) violation of the Fourth Amendment under § 1983

9  against Maile, Sullivan, and Does 1-5 by Rosa Brizuela in her capacity as special

10  administrator (the "Special Administrator") and in her personal capacity as a witness to

11  Rolando Brizuela's death; (2) "Excessive Force—Wrongful Death" under § 1983 against

12  Maile, Sullivan, and Does 1-5 by the Special Administrator; (3) deprivation of familial

13  relations and the right of association against Maile, Sullivan, and Does 1-5 by all Plaintiffs;

14  (4) interference with Second Amendment right to bear arms under § 1983 against the

15  City, Maile, Sullivan, Does 1-10 by the Special Administrator; (5) failure to train under §

16  1983 against the City and Does 6-10 by the Special Administrator; (6) failure to investigate

17  or discipline against the City and Does 6-10 by the Special Administrator; (7) ratification

18  under § 1983 against the City and Does 6-10 by the Special Administrator; (8) false

19  imprisonment under Nevada state law against Maile, Sullivan, and the City by the Special

20  Administrator; (9) "Battery—Wrongful Death" against the City, Maile, and Sullivan by the

21  Special Administrator; (10) negligence under Nevada state law against the City, Maile,

22  and Sullivan by all Plaintiffs; (11) denial of medical care under § 1983 against Maile,

23  Sullivan, and Does 1-5 by all Plaintiffs; (12) disability discrimination under the

24  Rehabilitation Act of 1973 and Title II of the ADA against the City by the Special

25  Administrator; and (13) municipal liability under § 1983 against the City and Does 6-10 by

26  all Plaintiffs.

27      Defendants move to dismiss the TAC in part. (ECF No. 56.) First, Defendants

28  argue that Plaintiffs have not complied with the Court's prior oral instruction that they may

only assert one *Monell* claim against the City. (*Id.* at 2.) Second, Defendants assert that Plaintiffs still assert various § 1983 claims against the City, rather than solely against Maile and Sullivan in their individual capacities. (*Id.*) Finally, Defendants oppose the addition of claims that weren't present in the SAC and that the TAC adds plaintiffs to some claims because the Court did not grant Plaintiffs leave to add those claims or parties. (*Id.*) Defendants also note that Rolando Brizuela's survival claims and the individual Plaintiffs' own claims are comingled, which creates confusion.

Plaintiffs opposed Defendants' Motion and offered, in the alternative, a countermotion for leave to file a fourth amended complaint. (ECF No. 64.) The Court will consider both motions below.

## III.    LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *See id.* at 678. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *See id.* Second, a district court must consider whether the factual allegations in the complaint allege a

1   plausible claim for relief. *See id.* at 679. A claim is facially plausible when the plaintiff's

2   complaint alleges facts that allow a court to draw a reasonable inference that the

3   defendant is liable for the alleged misconduct. *See id.* at 678. Where the complaint does

4   not permit the Court to infer more than the mere possibility of misconduct, the complaint

5   has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679

6   (alteration in original) (internal quotation marks and citation omitted). That is insufficient.

7   When the claims in a complaint have not crossed the line from conceivable to plausible,

8   the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

9        If the court grants a motion to dismiss, it must then decide whether to grant leave

10  to amend. The court should "freely give" leave to amend when there is no "undue delay,

11  bad faith[,] dilatory motive on the part of the movant, repeated failure to cure deficiencies

12  by amendments previously allowed, undue prejudice to the opposing party by virtue of . .

13  . the amendment, [or] futility of the amendment." Fed. R. Civ. P. 15(a); *Foman v. Davis*,

14  371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that

15  the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow*

16  *Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

17  **IV.    DISCUSSION**

18       In their opposition to Defendants' Motion, Plaintiffs moved in the alternative to file

19  a fourth amended complaint ("Countermotion"). (ECF Nos. 64 at 2; 64-1 (PFAC).)

20  Defendants do not expressly oppose Plaintiffs' Countermotion, but instead note that

21  Plaintiffs concede the TAC is flawed and argue that the PFAC does not cure all the

22  problems raised in their Motion. (ECF No. 69 at 6.) Because Plaintiffs have repeatedly

23  filed amended complaints that do not fix the issues, the Court will consider Defendants'

24  Motion first, then will determine whether the PFAC complies with the Court's

25  determinations.

26       **A.    Comingled Survival and Wrongful Death Claims**

27       Each of Plaintiffs' complaints has improperly mixed survival claims that the Special

28  Administrator may assert on behalf of Ronaldo Brizuela and the wrongful death claims

that Plaintiffs may assert on their own behalf. The TAC does not rectify this problem. Defendants therefore ask that the Court strike or dismiss Claim 2, Claim 9, and Claim 10 for failing to clearly indicate whether they are survival claims or wrongful death claims. (ECF No. 56 at 10.) Plaintiffs concede that these claims inadvertently included language of wrongful death and seek leave to, again, amend. (ECF No. 64 at 6.)

Defendants further request that the Court strikes demands for damages under NRS § 41.085, Nevada's wrongful death statute, from Claim 3, Claim 10, and Claim 13, because Nevada's damages cap applies to tort actions against officers or employees of a political subdivision of the State. (ECF No. 56 at 10.) Plaintiffs counter that striking *all* requests for damages under NRS § 41.085 would deny them their full recovery. (ECF No. 64 at 6.)

The Court will address these arguments in turn.

### 1.    Compound Wrongful Death Claims

Defendants argue Claim 2 ("Unreasonable Search and Seizure – Violation of Fourth Amendment – Excessive Force – Wrongful Death") in the TAC asserts both § 1983 excessive force and tortious wrongful death claims. (ECF No. 56 at 11.) Plaintiffs concede this is improper, and seek to amend their complaint to separate these two claims. (ECF No. 64 at 6.) The PFAC removes the reference to "wrongful death" in the header of Claim 2 (ECF No. 64-1 at 13-14) and includes a new, separated wrongful death claim as Claim 10, asserted by the individual Plaintiffs instead of the Special Administrator (*id.* at 25-26). The Court finds that separating these claims would cure the defect and will therefore permit Plaintiffs to amend the complaint to so reflect.

Similarly, Defendants argue that Claim 9 ("Battery – Wrongful Death") and Claim 10 ("Negligence – Wrongful Death") in the TAC assert hybrid survival tort claims and statutory wrongful death claims. (ECF No. 56 at 12-13.) Again, Plaintiffs concede that these claims should be separate, and the PFAC includes separate battery (Claim 6) and negligence (Claim 7) claims. (ECF No. 64-1 at 19-22.) However, the negligence claim in the PFAC is asserted by both the Special Administrator for negligence caused to Rolando

1    Brizuela as well as by Rosa Brizuela, Roland Brizuela, and Morgan Brizuela, for their

2    mental anguish and pain suffered as a result of Rolando Brizuela's death. (*Id.* at 21.)

3    Moreover, the negligence claim seeks damages under the wrongful death statute (*id.*)

4    and the survival statute (*id.* at 22). While the proposed battery claim is properly pleaded,

5    the proposed negligence claim still contains hybrid allegations of both survival and

6    wrongful death actions. The Court agrees with Defendants that the proposed amended

7    negligence claim is not properly pleaded. (ECF No. 69 at 3.)

8         For the above reasons, Defendants' Motion is granted as to these issues. Plaintiffs'

9    motion for leave to amend is also granted; however, the fourth amended complaint must

10   separate the negligence claims asserted by the Special Administrator as a survival action,

11   the negligence claims asserted by the individual Plaintiffs, and the statutory wrongful

12   death claims asserted by the individual Plaintiffs pursuant to NRS § 41.085.

13                    **2.    Wrongful Death Damages**

14        Defendants argue that references to damages afforded by NRS § 41.085 in Claim

15   3 ("Substantive Due Process – Violation of the First and Fourteenth Amendment –

16   Deprivation of Familial Relations and the Right of Association"), Claim 10 ("Negligence –

17   Wrongful Death"), and Claim 13 ("Municipal Liability for Unconstitutional Custom or

18   Policy") in the TAC are improper. (ECF No. 56 at 13.) Specifically, Defendants argue that

19   Nevada law requires that a plaintiff may only assert a claim for wrongful death through a

20   claim under the wrongful death statute. *See Alsenz v. Clark Cnty. Sch. Dist.*, 864 P.2d

21   285, 288 (1993) (holding that "wrongful death actions must proceed under Nevada's

22   wrongful death statute" and reasoning that "[a]llowing the estate to recover these same

23   damages outside NRS 41.085 would result in double recovery"). Defendants concede

24   that each Plaintiff may bring a single claim for wrongful death under NRS § 41.085 but

25   may not allege multiple wrongful death claims. (ECF No. 56 at 13.)

26        The Court agrees with Defendants. Each Plaintiff may assert one wrongful death

27   claim, and it should be pleaded separately from the other tort or constitutional claims.

28   Accordingly, the Court will grant Plaintiffs' countermotion for leave to file an amended

9

1   complaint that asserts a separate wrongful death claim as Claim 10. (ECF Nos. 64 at 6,

2   64-1 at 25-26.) However, as explained above, the Court agrees with Defendants that the

3   reference to NRS § 41.085 in the negligence claim must be removed.

4           **B.**   ***Monell* Claims Against the City**

5         Defendants argue that Plaintiffs may assert only one *Monell* claim against the City,

6   with alternative theories of liability included in a single claim. (ECF No. 56 at 6.) Indeed,

7   the Court previously instructed Plaintiffs that the Special Administrator may only assert

8   one *Monell* claim, though she may assert various theories of liability. Defendants

9   therefore argue that Claim 5, Claim 6, Claim 7, and Claim 13 assert improperly duplicative

10   requests for relief. (*Id.*) Claim 6—"Failure to Investigate and Discipline"—is furthermore a

11   new claim that was not asserted in the SAC or even in the proposed TAC. (*Id.* at 7.)

12         "[M]unicipalities . . . can only be liable under § 1983 if an unconstitutional action

13   'implements or executes a policy statement, ordinance, regulation, or decision officially

14   adopted and promulgated by that body's officers." *Rivera v. Cnty. of L.A.*, 745 F.3d 384,

15   389 (9th Cir. 2014) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658,

16   690 (1978)). To state a *Monell* claim, "a plaintiff must allege either that (1) 'a particular

17   municipal action *itself* violates federal law, or directs an employee to do so'; or (2) the

18   municipality, through inaction, failed to implement adequate policies or procedures to

19   safeguard its community members' federally protected rights." *Hyun Ju Park v. City and

20   Cnty. of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020) (quoting *Bd. of Commr's of Bryan

21   Cnty. v. Brown*, 520 U.S. 397, 404 (1997)). The root of a *Monell* claim is the alleged

22   constitutional violation, for which the plaintiff claims the municipality's action or failure to

23   act is responsible. *See Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir.

24   2021).

25         The Court agrees with Defendants that the TAC includes duplicative claims against

26   the City for municipal liability. Claim 5 ("Failure to Train") alleges that the City trains its

27   officers to violate the Fourth Amendment, and, as a result, Rolando Brizuela's Fourth

28   Amendment rights were violated. (ECF No. 55 at 18.) Claim 6 ("Failure to Properly

Investigate and Discipline") alleges that the City maintained a longstanding pattern of failing to investigate police officer misconduct, which resulted in further constitutional violations, including the ones suffered by Rolando Brizuela. (*Id.* at 21-23.) Claim 7 ("Ratification") alleges the City ratified Maile and Sullivan's actions and failures to act, including their decision to shoot Rolando Brizuela. (*Id.* at 23-25.) These claims each allege a theory of municipal liability that resulted in the alleged violation of Rolando Brizuela's Fourth Amendment rights. Accordingly, they are properly pleaded as a single claim against the City by the Special Administrator.

Plaintiffs also assert a *Monell* claim through Claim 13 ("Municipal Liability for Unconstitutional Custom or Policy"). (*Id.* at 32-39.) Claim 13 reiterates the allegations in Claim 5, Claim 6, and Claim 7. However, it is brought by not only the Special Administrator, but also by Rosa Brizuela in her individual capacity, Roland Brizuela, and Morgan Brizuela. (*Id.* at 32.) Claim 13 identifies two separate constitutional violations—Defendants' violation of Rolando Brizuela's Fourth Amendment right to be free from excessive force, and their violation of individual Plaintiffs' First and Fourteenth Amendment rights as pleaded in Claim 3. (*Id.* at 33-34.)

As explained above, the Special Administrator is the proper person to assert survival claims on behalf of Rolando Brizuela's estate, and the individual Plaintiffs are the proper persons to assert violations of their own constitutional rights. Claim 13 is therefore a hybrid claim. The Special Administrator may assert a single claim for municipal liability under § 1983 that alleges all the theories of liability the Special Administrator wishes to pursue. But the individual Plaintiffs may assert a single claim for municipal liability for their constitutional violations suffered as a result of Sullivan and Maile's actions or failure to act.

///

///

///

///

1    The Court therefore grants Defendants' Motion as to the duplicative *Monell* claims,

2    and also grants Plaintiffs' Countermotion to file a fourth amended complaint that comports

3    with this instruction.[3]

4    **C.    Section 1983 Second Amendment Claim Against the City and**

5    **Defendant Officers**

6    Defendants further argue that Plaintiffs' § 1983 claims may only be asserted

7    against Maile and Sullivan as individuals. (ECF No. 56 at 7.) During oral argument, the

8    Court did instruct Plaintiffs that the § 1983 constitutional violation claims that do not

9    articulate *Monell* liability may not be brought against the City. Defendants argue that

10   Claim 4 ("Interference with the Right to Bear Arms") is improperly asserted against Maile,

11   Sullivan, the Doe Defendants, and the City. (*Id.* at 7-8.) Plaintiffs concede that Claim 4

12   should be asserted solely against Maile and Sullivan (ECF No. 64 at 5-6), and have

13   amended Claim 4 in the PFAC accordingly (ECF No. 64-1 at 17-18).

14   The Court agrees. As explained above, "a local government may not be sued

15   under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S.

16   at 694. Accordingly, the Special Administrator may bring a § 1983 claim for violation of

17   Rolando Brizuela's Second Amendment rights directly against Maile and Sullivan. But for

18   municipal liability for that violation to attach, the Special Administrator must plead that a

19   City policy (or the City's lack of requisite policy) was responsible for the underlying

20   violation.

21   Because Plaintiffs improperly assert Claim 4 against the City without pleading a

22   theory of municipal liability, the Court will grant Defendants' Motion on this issue. The

23   Court will further permit Plaintiffs to amend their complaint for the Special Administrator

27   _____

28   [3]The Court notes that the PFAC appears to properly remove the duplicative *Monell* claims for Rolando Brizuela's alleged constitutional violations. (ECF No. 64-1 at 25-30.) The PFAC does not allege municipal liability for the alleged violations of the individual Plaintiffs' constitutional rights.

1    to assert a § 1983 claim against Maile and Sullivan and a separate claim against the City

2    for municipal liability.[4]

3        **D.    New Claims and Added Plaintiffs**

4            Defendants move to dismiss two claims in the TAC on the grounds that they are

5    newly raised, were filed without leave of Court, and are barred by the statute of limitations.

6    (ECF No. 56 at 14-17.) Plaintiffs argue broadly that the claims in question—Claim 1, Claim

7    3, and Claim 11—are not new claims, but iterations of previously raised claims. (ECF No.

8    64 at 6-7.) Moreover, Plaintiffs argue, these claims would relate back to the original

9    complaint even if they were new or added new parties. (*Id.*) The Court will first address

10   Claim 3, then will consider Claims 1 and 11.

11       **1.    Claim 3 – Deprivation of Familial Relations and Right of**
12           **Association**

13           Claim 3 ("Substantive Due Process – Violation of the First and Fourteenth

14   Amendment – Deprivation of Familial Relations and the Right of Association") alleges

15   Defendants violated the First and Fourteenth Amendment rights of the individual Plaintiffs

16   and of Ronaldo Brizuela, as asserted by the Special Administrator. (ECF No. 55 at 14-

17   16.) In their Motion, Defendants argue Claim 3 of the TAC presents two main issues.

18   (ECF No. 56 at 14-17.) First, Defendants note that Claim 3 asserts a hybrid First

19   Amendment and Fourteenth Amendment § 1983 claim. Second, Defendants assert that

20   the claim is newly raised and is barred by the statute of limitations.

21           As a preliminary matter, the Court agrees with Defendants that Claim 3 contains

22   at least two separate distinct claims—the Fourteenth Amendment substantive due

23   process claim and the First Amendment right of association claim—that must be

24   considered individually. Moreover, the Court notes that the SAC does include a claim for

25   "Deprivation of Familial Relations" asserted as a violation of substantive due process

26

27           _____

28           [4]The Court reiterates that the PFAC appears to properly separate these claims.
     The Special Administrator's claim against the City is asserted in its single municipal
     liability claim (ECF No. 64-1 at 25-30) and the claim against Maile and Sullivan is asserted
     as a separate § 1983 claim (*id.* at 17-18).

1    under the Fourteenth Amendment (ECF No. 28 at 12-13), but does not mention the First

2    Amendment or the Right of Association. The Court therefore considers the Fourteenth

3    Amendment substantive due process claim amended, but the First Amendment freedom

4    of association claim newly added.

5         The First Amendment right of association is newly pleaded. Defendants argue that

6    even if the Court intended to broadly grant leave to amend the SAC, they are nevertheless

7    prejudiced by having to defend claims which have passed the limitation date. Moreover,

8    Defendants argue that Plaintiffs have not explained how the First Amendment claims

9    would relate back to the original complaint.

10        "An amendment to a pleading relates back to the date of the original pleading when

11   . . . the amendment asserts a claim or defense that arose out of the conduct, transaction,

12   or occurrence set—or attempted to be set out—in the original pleading." Fed. R. Civ. P.

13   15(c)(1)(B). The Rule 15(c)(1)(B) standard asks "whether the amended claim arises out

14   of the same conduct, transaction, or occurrence as that set forth in the original complaint."

15   *ASARCO, LLC v. Union Pacific R.R. Co.*, 765 F.3d 999, 1005 (9th Cir. 2014). "Thus,

16   relation back is allowed when the original pleading adequately put the defendant on notice

17   of the facts which ultimately underlie the new claim." *Wells Fargo Bank, N.A. v. Vegas

18   Prop. Servs., Inc.*, Case No. 2:17-cv-01463-MMD-PAL, 2019 WL 1937565, at *3 (D. Nev.

19   May 1, 2019) (citation omitted).

20        Plaintiffs' original complaint did allege that Defendants' actions deprived them of

21   their relationship with Rolando Brizuela.[5] Moreover, the First Amendment right to

22   association claim arises out of the exact same factual allegations several other claims—

23   that because Maile and Sullivan wrongfully killed Rolando Brizuela, they have violated

24   the individual Plaintiffs' right to maintain a relationship with him. Whether this claim is

25

26        [5]The initial complaint included many references to this harm. For example:
27   "Plaintiffs have also been deprived of the life-long love, companionship, comfort, support,
     society, care, and sustenance of DECEDENT, and will continue to be so deprived for the
28   remainder of her natural life" (ECF No. 1 at 9), and "Plaintiff ROSA ESTHER BRIZUELA
     was thereby deprived of her constitutional right of familial relationship with DECEDENT"
     (*id.* at 11).

ultimately viable or whether it will be successful as pleaded is not presently a question before the Court. Because the Court finds that Defendants had notice of the facts underlying Plaintiffs' First Amendment claim from the initial complaint, the claim relates back to the original filing date. Accordingly, Defendants' Motion to dismiss the First Amendment claim will be denied.

The Court further grants Plaintiffs leave to amend the TAC to separate the First and Fourteenth Amendment claims, which (1) are improperly combined as a single § 1983 claim and (2) improperly comingles survival claims pleaded by the Special Administrator and individual Plaintiffs' claims.

The subheading for Claim 3 in the PFAC ostensibly removes the survival claim and only asserts claims by the individual Plaintiffs against Maile, Sullivan, and Doe Defendants. (ECF No. 64-1 at 15-17.) However, the content of the PFAC's Claim 3 still alleges that Defendants "are liable for Decedent's and ROSA, ROLAND, and MORGAN BRIZUELA's injuries." (*Id.* at 17.) It is therefore unclear whether the PFAC intends to include First Amendment right of association and Fourteenth Amendment substantive due process survival claims. Plaintiffs' fourth amended complaint should clarify this confusion.

### 2. Claim 1 – Unreasonable Search and Seizure & Claim 11 – Denial of Medical Care

Defendants also argue that Plaintiffs may not add plaintiffs to claims asserted in the SAC because the statute of limitations has expired to add those parties. (ECF No. 56 at 16.) Specifically, Defendants contest: (1) adding Rosa Brizuela to Claim 1; (2) adding the Special Administrator to Claim 3; and (3) adding Roland Brizuela and Morgan Brizuela to Claim 11. (*Id.*)

Rule 15 specifically refers to amendments which "change[] the party or the naming of the party *against whom* a claim is asserted." Fed. R. Civ. P. 15(c)(1)(C) (emphasis added). The rule does not expressly address adding Plaintiffs, as the concern is whether a defendant is on notice of the claims against her or him. However, the Ninth Circuit has reasoned in the class action context:

1
2
3

> An amendment adding a party plaintiff [under Rule 15(c)] relates back to the date of the original pleading only when: (1) the original complaint gave the defendant adequate notice of the claims of the newly proposed plaintiff; (2) the relation back does not unfairly prejudice the defendant; and (3) there is an identity of interests between the original and newly proposed plaintiff.

4     *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 935-36 (9th Cir. 1996). Again, the crucial

5     concern is "[w]hether the defendant had adequate notice of the newly proposed plaintiff's

6     claims." *True Health Chiropractic Inc. v. McKesson Corp.*, 322 F.R.D. 589, 605 (N.D. Cal.

7     2019).

8          As explained above, Claim 3 improperly asserts multiple claims and comingles

9     Rolando Brizuela's survival claims and the individual Plaintiffs' own claims. However,

10    while Claim 3 should be amended for those reasons, adding the Special Administrator to

11    Claim 3 is not improper because she is not newly added. The SAC's Fourteenth

12    Amendment substantive due process claim and the SAC's deprivation of familial relations

13    claim were asserted by "All Plaintiffs," including the Special Administrator. (ECF No. 28

14    at 10-12.) Even if the Court did consider the Special Administrator newly added, the Court

15    finds that Defendants had proper notice of the facts surrounding the claim, as it was

16    asserted by other Plaintiffs, and that Defendants are not prejudiced, as they have not

17    been required to substantively respond to the claims yet and would have to investigate

18    the identical claims brought by the other Plaintiffs.

19          Likewise, the Court reasons that adding Rosa Brizuela in her individual capacity to

20    Claim 1 ("Unreasonable Search and Seizure – Violation of Fourth Amendment") and

21    adding the individual Plaintiffs to Claim 11 ("Denial of Medical Care – Fourth and

22    Fourteenth Amendments") is improper, as those are survival action claims which may

23    only be brought by the Special Administrator.[6] (*Id.*) As pleaded, these claims arise out of

24    harms to Rolando Brizuela and violations of his constitutional rights. The Court will

25    therefore grant Plaintiffs leave to amend Claim 1 and Claim 11 to separate the survival

26

27    _____

28    [6]The Court notes that the PFAC properly removes the individual Plaintiffs from the Denial of Medical Care claim (ECF No. 64-1 at 22-23), but still improperly includes Rosa Brizuela in her individual capacity on Claim 1 (*id.* at 11-12).

1  claims from the individual Plaintiffs' claims, but does not find that adding one of the four

2  named plaintiffs—the Special Administrator, Rosa Brizuela as an individual, Roland

3  Brizuela, or Morgan Brizuela—does not relate back to the original filing.

4       As they appear in the TAC, Claims 1 and 11 are improperly pleaded. Accordingly,

5  the Court will grant Defendants' Motion in part, and will further grant Plaintiffs leave to

6  amend the complaint to name only the proper parties and otherwise appropriately

7  separate these claims. However, because the additional Plaintiffs would relate back, the

8  Court also denies Defendants' Motion as to their argument that Plaintiffs' claims would be

9  barred by the statute of limitations.

10       **E.    Photographs in the Complaint**

11       Defendants ask the Court to strike the photographs Plaintiffs included in the TAC

12  under Rule 12(f) of the Federal Rules of Civil Procedure.[7] (ECF No. 56 at 17.) Plaintiffs

13  argue the photo of N.A. was chosen to highlight his injury while concealing as much of

14  his face as possible. (ECF No. 64 at 8.) They further assert that the photographs of

15  Rolando Brizuela's body "are illustrative of the facts of the complaint(s)" and are not being

16  entered into evidence. (*Id.*) Defendants argue these photographs should be stricken

17  because they have not been submitted into evidence but are part of a public document.

18  (ECF No. 56 at 18.)

19       A court may strike material in a pleading if it is "redundant, immaterial, impertinent,

20  or scandalous." Fed. R. Civ. P. 12(f). The purpose of a Rule 12(f) motion is "to avoid the

21  expenditure of time and money that must arise from litigating spurious issues by

22  dispensing with those issues prior to trial . . .." *Whittlestone, Inc. v. Handi-Craft Co.*, 618

23  F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th

24  Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)).

25  Immaterial matters are those which have "no essential or important relationship to the

26

27       [7]The Court will address Defendants' request. However, Defendants should have

28  filed a separate motion to strike. *See* LR IC 2-2(b) ("For each type of relief requested or
purpose of the document, a separate document must be filed and a separate event must
be selected for that document.").

claim for relief or the defenses being plead," and impertinent matters are "statements that do not pertain and are not necessary to the issues in question." *Fantasy*, 984 F.2d at 1527 (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 at 706-07, 711 (1990)). "An allegation is 'scandalous' if it improperly casts a 'cruelly derogatory light' on someone, most typically a party to the action." *Kennedy v. Las Vegas Sands Corp.*, Case No. 2:17-cv-00880-JCM-VCF, 2017 WL 4227941, at *2 (D. Nev. Sept. 22, 2017); *see also Flynn v. Love*, Cas No. 3:19-cv-00239-MMD-CLB, 2020 WL 5607652, at *2 (D. Nev. Sept. 18, 2020) (explaining that scandalous matters must "reflect cruelly upon the defendant's moral character, use repulsive language or detract from the dignity of the court or be relevant, degrading charges that have gone into unnecessary detail" (internal quotations and citations omitted)).  To be scandalous, "[i]t is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action." 5C Wright et al., *supra*, § 1382 (2021). Rather, a court may grant a motion to strike scandalous matter in order to "avoid[] prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegations any other unnecessary notoriety inasmuch as, once filed, pleadings generally are public documents and become generally available." *Id.* "A Rule 12(f) motion to strike is an extreme and drastic remedy—it is generally disfavored." *Kennedy*, 2017 WL 4227941 at *2.

Defendants do not specify whether they are arguing the photographs are redundant, immaterial, or scandalous. Instead, they argue that including the pictures risks the possibility of inflaming jurors' sympathies. (ECF No. 56 at 18.) Defendants further argue it would be improper to show the pictures to the general public "without allowing defendants to object based on lack of foundation, relevance, or the probative value being substantially outweighed by a danger of unfair prejudice." (*Id.*) Defendants do not argue, however, that the photographs lack foundation, are irrelevant, or are less probative than prejudicial.

1    The Court will not strike the photographs. As a threshold matter, Defendants have

2    failed to demonstrate how the images are irrelevant, immaterial, impertinent, or

3    scandalous. Indeed, most of their arguments relate solely to the fact that the photographs'

4    admissibility is not certain. But whether the photographs are admissible is not at issue

5    here.[8] Many allegations in the complaint may be inadmissible at trial, and pleadings are

6    not routinely shown to the jury. Accordingly, the standards for what is admissible in

7    evidence are quite different than the standards for what may be included in a pleading.

8    Moreover, there is no blanket rule that even graphic images may not be included in

9    pleadings. *See, e.g.*, *Nkemakolam v. St. John's Military Sch.*, 876 F. Supp. 2d 1240, 1245-

10   47 (D. Kan. 2012) (rejecting that photographs of injured and bound plaintiffs were

11   "scandalous" in a case for mistreatment of students); *Rowan v. Sunflower Elec. Power*

12

13   [8]Defendants do not clearly argue that pictures may never be included in a
complaint. However, Defendants do appear to argue that including evidentiary material is

14   improper in pleadings. (ECF No. 69.) Other courts that have addressed this issue have
considered Rule 12(f)'s relationship with Rules 8(a), 10(b), and 10(c), which concern the

15   proper form of pleadings. *See, e.g.*, *Spoon v. Bayou Bridge Pipeline, LLC*, 335 F.R.D.
468, 470-74 (M.D. La. 2020) (considering whether pictures inserted directly into a

16   complaint is proper under the aforementioned rules). However, these courts are split on
several questions.

17   In *Spoon*, the district court adopted a "more expansive" view of Rule 10(c) and
permitted photographs that were arguably evidentiary in the body of the complaint. *See*

18   335 F.R.D. at 474. That court relied on the admonition that motions to strike are disfavored
unless the contents would be confusing to the other party or distracted from the main

19   issues in the litigation. *See id.*

20   But a court in this circuit found that a reference to a video on YouTube was not "an
assertion of fact" but rather evidence to support a factual claim in the complaint and,

21   therefore, more "fairly characterized as an exhibit, rather than 'background.'" *Hahn v. City
of Carlsbad*, Case No. 15-cv-2007 DMS (BGS), 2016 WL 3211801, at *4 (S.D. Cal. Feb.

22   3, 2016). In so finding, that court determined the video was "immaterial" because it was
not a written instrument, and struck its reference. *See id.* Another court found similarly

23   that a photograph included in the body of a complaint should instead be attached as an
exhibit. *See Cabot v. Wal-Mart Stores, Inc.*, Case No. CIV 11-0260 JB/RHS, 2012 WL

24   1378529, at *7-8 (D.N.M. Apr. 10, 2012). The *Cabot* court, however, did not exclude the
photograph from the complaint. *See id.* Because it may be difficult for an opposing party

25   to admit or deny a photograph, as it is not in itself an allegation, that court reasoned the
proper place for photographs is in an attachment, as exhibits. *See id.*

26   The Court need not decide this issue here, as Defendants did not clearly raise it.

27   However, to the extent that Defendants are arguing that the photographs are evidentiary
and thus should be excluded, the Court notes that there is no clear authority from the

28   Ninth Circuit, nor consensus among other district courts, that inclusion of photographs
that may or may not later be admissible is improper.

19

*Corp.*, Case No. 15-cv-9227-JWL-TJJ, 2015 WL 8024320, at *2 (D. Kan. Dec. 4, 2015) (also rejecting that 32 photographs of electrical burns plaintiffs suffered were scandalous).

Defendants further argue that Plaintiffs' written explanation of the photographs is inaccurate. Again, Defendants fail to explain how Plaintiffs' allegations or descriptions fall within the matters Rule 12(f) is meant to strike—irrelevant, immaterial, or scandalous material. *See* Fed. R. Civ. P. 12(f). At this stage in the litigation, it is not proper for the Court to determine whether allegations in the complaint are or are not true. The Court therefore will not strike the explanations of the photographs.

### F.   Plaintiffs' Proposed Fourth Amended Complaint

The Court has addressed the PFAC throughout this order. While the PFAC cures many of the noted deficiencies in the TAC, it does not resolve all the problems Defendants raised. Although Plaintiffs have repeatedly filed procedurally deficient complaints, "[t]he court should freely give leave when justice so requires" Fed. R. Civ. P. 15(a)(1)(2), and "Rule 15's purpose 'is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities.'" *ASARCO*, 765 F.3d at 1005 (quoting 6 Wright et al., *supra* § 1471 (3d ed. 1998)). Accordingly, the Court will grant Plaintiffs leave to file a fourth amended complaint but instructs Plaintiffs to comply with the mandates of this order. Any claims that do not comply with the requirements of this order may be subject to dismissal.

### V.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendants' partial motion to dismiss (ECF No. 56) is granted in part and denied in part, as specified herein.

It is further ordered that Plaintiffs' countermotion for leave to file a fourth amended complaint (ECF No. 64) is granted. Plaintiffs have 21 days to file a fourth amended

complaint that cures the deficiencies outlined above. Any claims in the fourth amended complaint that do not comply with the requirements stated in this order may be subject to dismissal.

DATED THIS 13th Day of September 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE